**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

| | |
|---|---|
| **In re** | Chapter 11 |
| | Case No. 11-73929 (AST) |
| **AMAGANSETT FAMILY FARM, INC.**, *et al.*, | (Jointly Administered) |
| | Case Nos. 11-73928 (AST) and |
| Debtors. | 11-73930 (AST) |

---------------------------------------------------------------- X

| | |
|---|---|
| **AMAGANSETT FAMILY FARM, INC.**, *et al.*, | Adv. Proc. No. |
| Plaintiffs, | |
| v. | |
| **MADISON REALTY CAPITAL, L.P.** | |
| Defendant. | |

---------------------------------------------------------------- X

## ADVERSARY COMPLAINT FOR DECLARATORY RELIEF

Amagansett Family Farm, Inc. ("Amagansett Family Farm"), Ocean Vine, Inc. ("Ocean Vine"), and Amagansett Commons, LLC ("Commons"), the debtors and debtors-in-possession herein (collectively "Debtors" or "Plaintiffs"), hereby allege as and for their Complaint as follows:

### SUMMARY OF CLAIMS

1.  Plaintiffs bring this action to obtain a declaration of their rights under a forbearance agreement, as amended, that they entered with defendant Madison Realty Capital, L.P. ("Defendant" or "Madison") a secured creditor in these Chapter 11 cases. Under Paragraph 7(c) of the Second Amendment to Forbearance Agreement, *inter alia*, provided an event of default does not occur, and Borrower and Guarantors (as defined therein) comply in all material respects with the terms and conditions thereof (with the exception as such defaults as already

exist), Defendant's right to collect a deficiency judgment against the Debtors and certain non-debtor affiliates will be waived, and Defendant's right to enforce guarantees or seek to pursue the Guarantors for personal liability in connection with the loan will be waived.  Despite the clear language of the Second Amendment to Forbearance Agreement, Defendant has taken the untenable position that Paragraph 7(c) of such agreement only applies to waive the guarantees, and does *not* waive Defendant's deficiency judgment claims.  Accordingly, Plaintiffs herein seek the following declarations:

    (a)    Pursuant to Paragraph 7(c) of the Second Amendment to Forbearance Agreement, if Borrower and Guarantors comply in all material respects with the terms and conditions of the Second Amendment to Forbearance Agreement:  (i) Defendant's rights to collect a deficiency judgment are waived; and (ii) the collateral documents currently in escrow with Defendant pursuant to the Forbearance Agreement shall be deemed null and void and Defendant shall return same to Plaintiff's; and

    (b)    Borrower and Guarantors have complied in all material respects with the terms and conditions of the Second Amendment to Forbearance Agreement such that if the Amagansett Farm Properties are sold in the Debtors' bankruptcy proceedings: (i) Defendant shall not be entitled to collect a deficiency judgment; and (ii) the collateral documents currently in escrow with Defendant pursuant to the Forbearance Agreement shall be deemed null and void and Defendant shall return same to Plaintiffs.

2.    Obtaining the foregoing declarations is necessary to determine whether Defendant is entitled to vote on the Debtors' proposed plan, which provides for the sale of the Amagansett Farm Properties.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

4.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.    Venue of this proceeding is proper under 28 U.S.C. § 1409.

## PARTIES

6.    Plaintiff Amagansett Family Farm is a corporation formed under the laws of the

State of New York with its principal place of business at 551 Montauk Highway, Amagansett, New York, 11935.

7. Plaintiff Ocean Vine is a corporation formed under the laws of the State of New York with its principal place of business at 551 Montauk Highway, Amagansett, New York, 11935.

8. Plaintiff Amagansett Commons is a limited liability company formed under the laws of the State of New York with its principal place of business at 551 Montauk Highway, Amagansett, New York, 11935.

9. Upon information and belief, Defendant is a limited partnership formed under the laws of the State of Delaware with its principal place of business at 825 Third Avenue, 37th Floor, New York, New York 10022. Defendant, a hedge fund, is a secured creditor in these cases, having made a loan to the Debtors, and certain non-debtor affiliates (collectively with the Debtors, the "Borrowers") on or about August 20, 2007, to refinance existing loans on properties owned by the Borrowers.

## STATEMENT OF FACTS

### History of the Debtors, Their Properties and Their Businesses

10. For the past fifty (50) years, the Principi family, the principals and sole Equity Interest holders of the Debtors, have been building and developing custom homes and commercial buildings on the East End of Long Island, particularly in East Hampton, Amagansett and Southold, New York. Over the course of the past seventy (70) years, the Principi Family has been involved in at least twenty-five (25) separate development construction projects, both on the high-end residential side, as well as for commercial properties.

11. The Debtors own three (3) separate properties, located at 531 Montauk Highway, Amagansett, New York (the "531 Montauk Highway Property"), 551 Montauk Highway,

Amagansett, New York (the "551 Montauk Highway Property") and 561 Montauk Highway, Amagansett, New York (the "561 Montauk Highway Property", together with the 531 Montauk Highway Property and the 551 Montauk Highway Property, the "Amagansett Farm Properties"). A brief description of these properties is set forth below.

12. <u>The 531 & 561 Montauk Highway Properties</u>. The 531 Montauk Highway Property, which has a total of 4.6 acres, is on the Western side of the Debtors' three (3) properties, and which are collectively referred to herein as "Ocean View Farm." The 561 Montauk Highway Property, which has a total of 11.98 acres, is on the eastern side of Ocean View Farm.

13. <u>The 551 Montauk Highway Property.</u> This separately deeded 7.2 acre site is located directly in between the 531 and 561 Montauk Highway Properties, and shares common lot lines with each. Together, these three separate properties make up one contiguous location that has a total of 23.78 acres, with frontage on the north side of Montauk Highway of 1,895 feet. The 551 Montauk Highway Property is improved with a 40' wide x 120' long building that is currently configured as a horse barn on the ground floor, has 3,500 sq. ft. of residential space on the second floor with 6 bedrooms and 3 full bathrooms, and a 12' high basement under the entire building. This building is located within its own 1.5 acre site within the 7.2 acre lot.

**Madison: The Debtors' Secured Creditor**

14. Madison's mortgage originally encumbered seven (7) properties,[1] owned by the Borrowers, and provided for a construction loan to complete ongoing projects on the properties. The construction draws were to be used to build and complete a restaurant at "Southold Pointe" in Southold, New York, and to develop an exclusive vineyard community at "Ocean View Farm"

---

[1] As will be described in more detail below, one (1) of the properties owned by a non-debtor affiliate was sold and the proceeds used to pay down Madison's mortgage, and three (3) of the properties owned by non-debtor affiliates were transferred to Madison by deed in lieu of foreclosure prior to the Debtors' Chapter 11 filings.

in Amagansett, New York. Madison's loan to the Debtors, and the four (4) related non-debtor affiliates (Bluff Road Realty, LLC, Southold Pointe LLC, North Fork Resources, Inc., and Amagansett Business Center, Inc.), collectively, was in the original principal amount of Twenty Million Seven Hundred Twenty Thousand and 00/100 Dollars ($20,720,000.00), and evidenced by a Note dated as of June 29, 2007.

15. As part of the transaction, Madison became the holder of an Agreement of Spreader, Consolidation and Modification of Mortgage, dated June 29, 2007 (the "First Mortgage"), encumbering the following real property and improvements: (a) the 531 Montauk Highway Property; (b) the 551 Montauk Highway Property; (c) 561 Montauk Highway Property; (d) 64300 Main Road, Southold, New York (the "Southold Marina"); (e) 8595 Cox Lane, Cutchogue, New York (the "Cutchogue Business Center"); (f) 136 Main Street, Amagansett, New York (the "Amagansett Business Center"); and (g) 138 Bluff Road, Amagansett, New York (the "Bluff Road Property"). In August 2007, upon the sale of the Bluff Road Property (which was owned by Bluff Road Realty, LLC), Madison received in excess of $5.3 million from the sale proceeds, although its loan to the Debtors was only paid down by approximately Four Million Dollars ($4,000,000) from the proceeds of sale. Madison's loan was amended by an Amended and Restated Note dated August 20, 2007 (as amended, the "First Mortgage Note"), in the original principal amount of Sixteen Million Seven Hundred Thirty Thousand and One Hundred Thirty and 00/100 ($16,730,130.00) Dollars (the "First Mortgage Loan").

16. In addition to the First Mortgage Loan, Madison made a building/construction loan to Commons, Family Farm and Southold Pointe, LLC, collectively, in the original principal amount of Four Million Seven Hundred Five Thousand and 00/100 ($4,705,000.00) Dollars (the "Building Loan"), evidenced by a Building Loan Note dated as of August 20, 2007 (the

"Building Loan Note"), in the original principal amount of the Building Loan. As part of the Building Loan transaction, Madison became the holder of a Building Loan Mortgage and Security Agreement dated August 20, 2007 (the "Building Loan Mortgage"), encumbering the following real property and improvements: (a) the 531 Montauk Highway Property; (b) the 561 Montauk Highway Property; and (c) the Southold Marina.

17. Madison also made a project loan to Commons, Family Farm and Southold Pointe, LLC, collectively, in the original principal amount of Five Hundred Eighty-Seven Thousand and 00/100 ($587,000.00) Dollars (the "Project Loan"), evidenced by a Project Loan Note dated as of August 20, 2007 (the "Project Loan Note"), in the original principal amount of the Project Loan. Madison became the holder of a Project Loan Mortgage and Security Agreement dated August 20, 2007 (the "Project Loan Mortgage"), encumbering the following real property and improvements: (a) the 531 Montauk Highway Property; (b) the 561 Montauk Highway Property; and (c) the Southold Marina.

18. The First Mortgage Loan, the Building Loan Mortgage and the Project Loan Mortgage all cross defaulted with each other. These loans also were secured by certain joint and several guarantees (the "Guarantees") of Richard Principi, Virginia Principi, Emeterio Velasquez, Yvonne Velasquez and Dolores Principi. The original scheduled maturity date under the First Mortgage Loan, the Building Loan and the Project Loan was August 19, 2008. The Debtors' intention was to build-out the projects, refinance Madison with a conventional lender, and then sell the properties. (All loan documents referred to above in this section are collectively referred to as "the Madison Loan Documents.")

**The Building Loan Dispute**

19. Under the Building Loan, Madison required that its project engineer, Blake Global ("Blake"), inspect the progress of the projects and approve any draws from the Building

Loan. From August 2007 through February 2008, each request that was made with respect to draws from the Building Loan was reviewed and approved by Blake. As of February 2008, five (5) draws had been completed for Southold Pointe in the total amount of $1,057,500, and three (3) draws were completed for Ocean View Farm in the total amount of $1,196,000. In March 2008, while a draw request was pending, Madison notified the Debtors that it was terminating Blake and hiring a new engineer to "re-evaluate the properties for further funding."

20. Madison's new engineer initially advised Madison that the projects were "out-of-balance," and that the remaining draw amounts needed to be "reapportioned." The Debtors disagreed with this assessment. In fact, as a result of the Debtors' lengthy experience in building on the East End of Long Island, by February 2008 the Debtors were five (5) months ahead of their projections in terms of progress on the construction projects. However, two (2) months later, after the Debtors reworked the proposed draws three times, Madison's engineer still believed that the Building Loan was "out of balance" and that no further draws would be permitted. Madison then halted the funding on all the projects. At the time Madison cut off the Building Loan draws, the Borrowers had drawn down less than fifty (50%) percent of the Building Loan.

21. During the time it took Madison to determine whether to allow the requested draws under the Building Loan, the Debtors continued to work on the projects, incurring significant trade debt. Further, as a result of Madison's decision to cease funding, the Guarantor's or their affiliates lent the Debtors over $1.25 million in order to satisfy the unpaid trade debt and building suppliers, to attempt to continue the completion of the projects. On July 18, 2008, Madison transmitted written notice to the Borrowers of the default (the "Default Notice") under the Building Loan.

**The Non-Judicial Foreclosure**

22.     Upon expiration of the notice period provided in the Default Notice, Madison commenced a non-judicial foreclosure against the Cutchogue Business Center (which property was owned by North Fork Resources, Inc.) based on the Borrower's alleged failure to bring the Building Loan back into "balance."  At the time the non-judicial foreclosure was commenced, the value of the Cutchogue Business Center was approximately $4.5 million.  To prevent the loss of the Cutchogue Business Center and to avoid the loss of approximately $1.2 million loan of the Principi Family to fund the properties, the Debtors engaged in extended negotiations with Madison, which culminated in the Forbearance Agreement described below.

**The Forbearance Agreement**

23.     On April 3, 2009, the Borrowers and Madison entered into a forbearance agreement (the "Forbearance Agreement"), whereby, as consideration for Madison agreeing to forebear from causing the sale of the Cutchogue Business Center through the non-judicial foreclosure, the Borrowers provided Madison with, *inter alia*:  (i) deeds in lieu of foreclosure for all of the properties (including the Debtors' properties) securing the Borrowers' obligations to Madison; (ii) the Guarantees; (iii) confessions of judgment; (iv) assignments and security interests in all of the stock and or membership interests of the Borrowers' members or shareholders in the Borrowers; and (v) an amendment to each of the Borrowers' organizational documents requiring that an "independent director," approved by Madison, be appointed to the Borrowers' boards, whose affirmative vote would be required prior to such Borrower seeking relief under the Bankruptcy Code.  The Forbearance Agreement was scheduled to terminate on January 31, 2010.  If terminated, Madison would have caused the deeds in lieu of foreclosure, and the confessions of judgment in the approximate amount of $21.0 million, to be filed.  A copy of the Forbearance Agreement is attached hereto as Exhibit A.

24.     Paragraph 12 of the Forbearance Agreement contains the default provisions of the Forbearance Agreement and Paragraph 12(c) contains the notice and cure provisions with respect to such defaults.  In particular, Paragraph 12(c) provides:

> (c)     If and to the extent any default by Borrower or Guarantor under this Agreement relates to the payment of money by Borrower to Guarantor, then, prior to such default becoming an Event of Default, Lender shall give written notice to Borrower, and Guarantor as the case may be, upon which Borrower and Guarantor shall have a period of five (5) business days following the date of such notice to cure such default.  Failure to cure such monetary default within such five (5) business day period shall constitute an Event of Default for purposes of this Agreement and entitle Lender to its remedies pursuant to this Agreement and the Loan Documents.  If and to the extent any default by Borrower or Guarantor under this Agreement relates to the failure by Borrower or Guarantor to observe any of the terms of this Agreement (other than with respect to the payment of money) or results from a breach of a representation or warranty of Borrower or Guarantor made in this Agreement, then, prior to such default becoming an Event of Default, Lender shall give written notice to Borrower, and Guarantor as the case may be, upon which Borrower and Guarantor shall have a period of thirty (30) days following the date of such notice to cure such default (unless such default requires work to be performed, acts to be done or conditions to be removed in order to cure such default and the same cannot be performed, done or removed, as the case may be, within such 30-day period, in which case no Event of Default shall be deemed to exist as long as Borrower, or Guarantor, as applicable, shall have commenced curing the same within such 30-day period and shall prosecute the same to completion with due diligence on [*sic*] before the date that is one-hundred and twenty (120) days following the date of such notice to cure such default).  The failure to cure such non-monetary default within such 30-day period (subject to extension pursuant to this Paragraph 12(d)) [*sic*] shall constitute an Event of Default for purposes of this Agreement and entitle Lender to its remedies pursuant to this Agreement and the Loan Documents.

25.     Paragraph 16(j) of the Forbearance Agreement provides:  "The headings used herein are for the convenience of the parties only and shall not be used to interpret the terms of this Agreement."

**The Amended Forbearance Agreement**

26.     To avoid losing all of the Borrowers' properties under the terms of the Forbearance Agreement and to avoid the loss of the approximate $1.25 million advanced by the

Principi family to continue the project construction, the Borrowers entered into negotiations with Madison to extend the Forbearance Agreement, ultimately executing an Amendment to Forbearance Agreement and Deed-In-Lieu of Foreclosure Agreement (the "Amendment to Forbearance Agreement") dated as of August 2, 2010.  A copy of the Amendment to Forbearance Agreement is attached hereto as Exhibit B.

27. Under the Amendment to Forbearance Agreement, *inter alia*, Madison received a deed-in-lieu of foreclosure to both the Cutchogue Business Center and the Southold Marina (which were owned by North Fork Resources, Inc. and Southold Point LLC, respectively).  The Borrowers' outstanding indebtedness to Madison was reduced by $8.0 million, and the forbearance expiration date was extended to September 30, 2010, and Madison conditionally waived any deficiency claim against the Debtors and released the guarantors from their personal liability under the Guarantees.

28. Notably, Paragraph 1 of the Amendment to Forbearance Agreement provides:

> Unless otherwise explicitly amended, deleted or revised in any manner herein, all terms, conditions and obligations of the Forbearance Agreement shall continue to be effective in strict accordance with the Forbearance Agreement notwithstanding the execution of this agreement.

29. The Amendment to Forbearance Agreement did not amend, delete or revise Paragraph 12(c) or Paragraph 16(j) of the Forbearance Agreement.

**The Second Amendment to Forbearance Agreement**

30. As the Amendment to Forbearance Agreement was about to expire, the Debtors again entered into negotiations with Madison to, *inter alia*, extend the expiration date. Ultimately, on October 27, 2010, the Debtors entered into the Second Amendment to Forbearance Agreement and Deed-in-Lieu of Foreclosure Agreement (the "Second Amendment to Forbearance Agreement"), effective as of September 30, 2010.  The Second Amendment to

Forbearance Agreement provided, *inter alia*, for a further extension of the forbearance expiration date to June 1, 2011, for the transfer to Madison, by deed in lieu of foreclosure, of the Amagansett Business Center (which property was owned by Amagansett Business Center, Inc.), and for a further $2.4 million reduction of the amount of the outstanding indebtedness.  (The Forbearance Agreement, the Amended Forbearance Agreement and the Second Amendment to Forbearance Agreement are collectively referred to as the "Forbearance Agreements.")  A copy of the Second Amendment to Forbearance Agreement is attached hereto as Exhibit C.

31. The Second Amendment to Forbearance Agreement also restated Madison's conditional waiver of any deficiency claim against the Debtors, and any claim against the guarantors.  Specifically, Paragraph 7(c) thereof provides:

> Provided that (i) an Event of Default does not occur under this Agreement, the Forbearance Agreement or any of the Loan Documents, except as already exists, (ii) Borrower and Guarantors comply in all material respects with terms and condition of this Agreement, including without limitation, sale of the Amagansett Farm Properties in accordance with either Paragraph 6 or 7 hereof, then Lender agrees to waive any and all rights to collect a deficiency judgment or pursue the Guarantors for any other personal liability in connection with enforcement of the Note, and to give Guarantors a release with respect to the Indebtedness, the Loan Documents, the Forbearance Agreement and/or this Agreement. **Such release with respect to Guarantors shall have a condition subsequent such that it will be void *ab initio* if any of the events stated in Paragraph 4(c)(i) - (iii) occur.**

32. Paragraph 6 of the Second Amendment to Forbearance Agreement[2] applies if the

---

[2] Paragraph 6 of the Second Amendment to Forbearance Agreement, entitled "Release of Remaining Properties" provides:

> (a) Lender shall only release the liens of the First Mortgage, Building Loan Mortgage and Project Loan Mortgage, as applicable, as against the premises commonly known as 531, 551 and 561 Montauk Highway, Amagansett, New York (collectively, the "Amagansett Farm Properties"), upon payment of the balance of the Indebtedness in full, less credits for amounts previously paid to Lender and/or credited pursuant to Paragraph 4(b) hereof, which payment must occur on or prior to June 1,2010, TIME BEING OF THE ESSENCE.
>
> (b) Notwithstanding anything to the contrary set forth herein, if Borrower conveys the Amagansett Farm Properties (the "Subsequent Conveyance") to Lender or a Lender affiliate prior to the Forbearance Expiration Date, and Borrower and Guarantors otherwise comply with the term and conditions of this Agreement, the Guarantors shall be released from the Indebtedness in accordance with the terms and

Debtors pay the balance of the Indebtedness, as defined therein, or convey the Amagansett Farm Properties to Lender or a Lender affiliate prior to the Forbearance Expiration Date. Neither of these events occurred. Accordingly, Paragraph 6 is not at issue in this action.

33. Paragraph 7(a) of the Second Amendment to Forbearance Agreement, entitled "Bankruptcy Contingency Plan," applies if the Debtors commence a bankruptcy action with the United States Bankruptcy Court, which, as alleged below, occurred. Paragraph 7(a) provides:

> If the Amagansett Farm Properties are not sold and/or released from the liens of the First Mortgage, Building Loan Mortgage and Project Loan Mortgage in accordance with Paragraph 6 above on or prior to June 1, 2011, TIME BEING OF THE ESSENCE, and Borrowers Amagansett Commons, Borrower Amagansett Family Farm and Borrower Ocean Vine commence a bankruptcy action with the United States Bankruptcy Court, then Lender or its is affiliate or nominee will agree to credit bid, pursuant to a Liquidation Plan to be agreed upon between Lender and Borrower, by making a minimum aggregate "stalking horse" bid with respect to the Amagansett Farm Properties, at a bankruptcy auction an amount not less than $10,000,000.00 (the "Bankruptcy Contingency Plan"). Notwithstanding the foregoing, Lender hereby reserves the right to credit bid at any higher amount.

34. Like Paragraph 1 of the Amendment to Forbearance Agreement, Paragraph 1 of the Second Amendment to Forbearance Agreement provides:

> Unless otherwise explicitly amended, deleted or revised in any manner herein, all terms, conditions and obligations of the Forbearance Agreement shall continue to be effective in strict accordance with the Forbearance Agreement notwithstanding the execution of this agreement.

35. The Second Amendment to Forbearance Agreement did not amend, delete or revise Paragraph 12(c) or Paragraph 16(j) of the Forbearance Agreement.

36. As the June 1, 2011 expiration date of the Second Amendment to Forbearance Agreement approached, the Debtors asked Madison for a further extension, which was refused, leaving the Debtors with only two alternatives; namely, either allow the Second Amendment to

---

conditions of this Agreement. In connection with the Subsequent Conveyance, Borrower shall execute an agreement which shall include terms materially similar to this Agreement, and deliver all documents reasonably required by Lender in connection therewith.

Forbearance Agreement to expire, which could have resulted in the transfer of the Debtors' properties to Madison under the deeds-in-lieu of foreclosure, or file these bankruptcy proceedings.

**The Bankruptcy Filings**

37. As stated above, Madison had previously required that each of the Debtors amend its corporate documents in order to add an "independent director" (the "Independent Director"). Pursuant to the terms of the corporate documents, as amended, prior to a bankruptcy proceeding being filed, it was a prerequisite that the Independent Director affirmatively authorize such filing. On May 31, 2011, pursuant to written consents in lieu of meetings, the directors, including the Independent Director, authorized the Debtors to file these Chapter 11 proceedings, determining that filing was in the best interests of the Debtors, their creditors and parties in interest. Immediately thereafter, the Debtors filed their petitions for relief under Chapter 11 of the Bankruptcy Code, commencing their bankruptcy cases.

38. As of the date of filing these bankruptcy cases, there had not been any defaults under the Forbearance Agreement, the Amendment to Forbearance Agreement and/or the Second Amendment to Forbearance Agreement, and Defendant had not alleged any defaults thereunder.

**Debtors' Plan Of Reorganization**

39. Subsequent to the commencement of these Chapter 11 proceedings, Debtors negotiated in good faith with Defendant in an effort to agree upon a plan of reorganization that provided for the sale/liquidation of the Amagansett Farm Properties.

40. Defendant failed to negotiate in good faith with Debtors with respect to a plan of reorganization, and refused to participate in discussions with Debtors, making it impossible for Borrowers to agree on a plan with Defendant.

41. Unable to reach an agreement with Defendant, Debtors' filed a proposed plan of reorganization ("Debtors' Plan") which complies with the provisions of Paragraph 7(a) of the Second Amendment to Forbearance Agreement by providing for the sale/liquidation of the Amagansett Farm Properties in these bankruptcy proceedings and for the distribution of the proceeds of the sale to Defendant.

42. Defendant filed its own plan providing for a sale of the Amagansett Farm Properties, which cannot be confirmed because, *inter alia*, the estates' administrative expenses will not be paid in full.

43. In Defendant's disclosure statement filed in support of its proposed plan, Defendant claimed that because the parties have failed to agree on a plan in which Defendant could credit bid to acquire the Amagansett Farm Properties, the conditions set forth in Section 7(a) cannot be satisfied.

44. On March 7, 2012, Defendant filed objections to Debtors' Plan wherein it claimed that Debtors have defaulted under the Madison Loan Documents by failing to pay real estate taxes after entering into the Second Forbearance Amendment and by the failing to propose a plan that satisfies the condition precedent giving rise to the release in Section 7(c).

45. Despite this assertion, Defendant has never declared Debtors to be in default and has never given Debtors written notice of default as required under paragraph 12(c) of the Forbearance Agreement.

46. At the Court's ruling conference held on January 5, 2012, the Court stated that the Debtors chapter 11 cases were filed before they would have been in default under the Second Forbearance Amendment.

47. The Borrower and the Guarantors have complied in all material respects with the terms and conditions of the Second Amendment to Forbearance Agreement.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment Pursuant to 28 U.S.C. § 2201)

48. The Debtors repeat and re-allege the allegations contained in paragraphs 1 through 47 as if fully restated herein.

49. As alleged above, the Borrower, including Debtors, and the Guarantors have all complied in all material respects with the terms and conditions of the Second Amendment to Forbearance Agreement.

50. Defendant relies upon the heading of Paragraph 7(c) Second Amendment to Forbearance Agreement to argue that it did not agree to waive a deficiency against the Debtors.

51. Paragraph 16(j) of the Forbearance Agreement makes clear that paragraph headings are for the convenience of the parties only and shall not be used to interpret the terms of the Forbearance Agreement, which expressly includes Paragraph 7(c) of the Second Amendment to Forbearance Agreement.

52. As such, a genuine and actual justiciable controversy presently exists between Debtors and the Defendant with regard to the interpretation of the Second Amended Forbearance Agreement.

53. A complete and final determination of these issues is not readily obtainable in another form of action or proceeding.

54. A declaration concerning this issue will not constitute an advisory opinion.

55. Accordingly, Debtors request a judgment declaring that, pursuant to Paragraph 7(c) of the Second Amendment to Forbearance Agreement, if Borrowers and Guarantors comply in all material respects with the terms and conditions of the Second Amendment to Forbearance Agreement: (i) Defendant's rights to collect a deficiency judgment are waived; and (ii) the collateral documents currently in escrow with Defendant pursuant to the Forbearance Agreement

shall be deemed null and void and Defendant shall return same to Plaintiffs.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Declaratory Judgment Pursuant to 28 U.S.C. § 2201)

56. The Debtors repeat and re-allege the allegations contained in paragraphs 1 through 55 as if fully restated herein.

57. Defendant has claimed that a sale of the Amagansett Farm Properties pursuant to Debtors' Plan will not meet the requirements set forth in Section 7(a) of the Second Amendment to Forbearance Agreement.

58. However, because the Debtors' Plan will result in a sale of the Amagansett Farm Properties in these bankruptcy proceedings, it will meet the requirements of Section 7(a) of the Second Amendment to Forbearance Agreement such that Defendant shall not be entitled to collect a deficiency judgment.

59. As alleged above, the Borrower, including Debtors, and the Guarantors have all complied in all material respects with the terms and conditions of the Second Amendment to Forbearance Agreement.

60. As such, a genuine and actual justiciable controversy presently exists between Debtors and the Defendant with regard to the interpretation of the Second Amended Forbearance.

61. A complete and final determination of these issues is not readily obtainable in another form of action or proceeding.

62. A declaration concerning this issue will not constitute an advisory opinion.

63. Accordingly, Plaintiffs request a judgment declaring that Debtors have complied in all material respects with the terms and conditions of the Second Amendment to Forbearance Agreement such that if the Amagansett Farm Properties are sold in the Debtors' bankruptcy proceedings, Defendant shall not be entitled to collect a deficiency judgment and the collateral documents currently in escrow with Defendant pursuant to the Forbearance Agreement shall be deemed null and void and Defendant shall return same to Borrowers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request a judgment against the Defendant:

a. Declaring that, pursuant to Paragraph 7(c) of the Second Amendment to Forbearance Agreement, if Borrower, including the Debtors, and Guarantors comply in all material respects with the terms and conditions of the Second Amendment to Forbearance Agreement: (i) Defendant's rights to collect a deficiency judgment are waived; and (ii) the collateral documents currently in escrow with Defendant pursuant to the Forbearance Agreement shall be deemed null and void and Defendant shall return same to Plaintiffs;

b. Declaring that Debtors have complied in all material respects with the terms and conditions of the Second Amendment to Forbearance Agreement such that if the Amagansett Farm Properties are sold in the Debtors' bankruptcy proceedings, Defendant shall not be entitled to collect a deficiency judgment, and the collateral documents currently in escrow with Defendant pursuant to the Forbearance Agreement shall be deemed null and void and Defendant shall return same to Plaintiffs; and

c. Such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 13, 2012

                TROUTMAN SANDERS LLP

                By:  *s/ John P. Campo*
                     John P. Campo
                     Matthew J. Aaronson
                     The Chrysler Building
                     405 Lexington Avenue
                     New York, New York 10174
                     Tel.: (212) 704-6075

                *Counsel for Debtors and Debtors in Possession*